UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
DANIEL SMITH,                           :
                         Plaintiff,     :
                                        :     09 Civ. 9256 (DLC)
             -v-                        :
                                        :     OPINION AND ORDER
NEW YORK CITY DEPARTMENT OF EDUCATION,   :
ED GARDELLA, CRAIG SHAPIRO, GERALDINE    :
AMBROSIO, and PATRICIA SQUIRE,          :
                         Defendants.    :
                                        :
----------------------------------------X

Appearances:

For plaintiff:

Daniel Smith, pro se
8 Valley View Terrace
Suffern, NY 10901

For defendants:

Christopher A. Seacord
Assistant Corporation Counsel
The City of New York Law Department
100 Church Street
New York, NY 10007


DENISE COTE, District Judge:

     Plaintiff Daniel Smith ("Smith") has sued the Board of

Education of the City School District of the City of New York

("BOE")[1] and others, alleging principally that the defendants had

initiated disciplinary proceedings against him in retaliation

_____

[1] Smith sued BOE under the name "New York City Department of
Education".

for his complaints that there was a disparity in funding between girls' and boys' sports programs at DeWitt Clinton High School ("DeWitt").  Smith had served as coach of the DeWitt varsity girls' softball team.  Defendants moved for summary judgment. For the following reasons, the motion is granted.


BACKGROUND

        The following facts are undisputed unless otherwise indicated.  Smith began his employment with the BOE on October 31, 1985.  In September 1991, he began serving as a physical education teacher at DeWitt.  During the 1999-2000 school year, Smith also began serving as the head coach of the varsity girls' softball team and an assistant coach of the varsity boys' football team.

    1. September 1999 Dispute with Referee

        In September 1999, a football referee accused Smith of attempting to prevent the referee from entering the field, poking his finger in the referee's chest, and spitting on the referee.  On September 23, following an investigation of the incident, defendant Geraldine Ambrosio ("Ambrosio"), DeWitt's Principal, suspended Smith from his duties as assistant football coach for the remainder of the season.  Smith filed a grievance challenging the suspension and the unsatisfactory rating he

received for his work that season as an assistant football coach, but later withdrew the grievance.

Ambrosio did not choose Smith to serve as a football coach the following season, the year 2000-2001. Smith challenged that decision through the grievance process, but an arbitrator denied the grievance.

2. Complaints About Disparity in Funding of Athletics Programs

In his complaint Smith asserts that "[d]uring the 2001-02 school year" he complained orally and in writing to Ambrosio and defendant Ed Gardella ("Gardella"), an Assistant Principal at DeWitt, that the women's softball program received disproportionately less money than the boys' sports programs. In his opposition to the motion for summary judgment, Smith adds that he "spoke out publicly against the disparate treatment of and funding for the women's softball program compared to the treatment and funding for the men's softball program."

3. 2002 Incidents

On May 16, 2002, the BOE issued Smith an unsatisfactory rating based on classroom observation by Gardella. Smith asserts that during the summer of 2002, the BOE denied him a line of duty injury status.

4. Denial of Coaching Opportunity in 2005

In September 2003, Smith was appointed to work as a physical education teacher at John F. Kennedy High School, and

in September 2005, at Grace Dodge Career and Technical High
School ("Grace Dodge").  Throughout this time, however, he
continued to serve as the varsity girls' softball coach at
DeWitt.  Smith asserts that during the 2005 football season the
BOE blocked him from being hired as an assistant football coach
at DeWitt.

5. June 2006 Observation of Class

On June 5, 2006, defendant Patricia Squire ("Squire"), an
Assistant Principal at Grace Dodge, observed Smith's physical
education class and issued Smith an unsatisfactory lesson rating
for arriving late to class and failing to provide bell-to-bell
instruction.  Within days of issuing that rating to Smith and
while observing another gym teacher, Squire noticed that Smith
spent a large portion of the class time conversing with another
teacher, that Smith's students were not involved in instruction,
and that several students who were not properly prepared were
playing basketball.  On June 15, Squire sent a letter to Smith
describing those observations.  In the fall of 2006, Ambrosio
selected Smith to serve as the junior varsity boys' football
coach at DeWitt.

6. March 2007 Incident with Female Student

Smith does not dispute that in early March 2007, a female
student reported to an Assistant Principal at Grace Dodge that
Smith had told her to sit on his lap and had winked at her, or

4

that another student corroborated the complaint.  The student's handwritten report of March 14, 2007, reads as follows:

> On Friday March 9, 2007 I was in my gym class and my teacher Mr. Smith came up to me and asked me if I was going to sit with him.  I then asked do you want me to sit with you.  Because I was sitting with all my friend [sic].  He then said no I want you to sit on me, on my lap.  After that I just stood in shock and didn't say anything.  Then my friend called him a pevert [sic].  After all this happened [sic] he kept winking at me.

The Assistant Principal promptly informed defendant Craig Shapiro ("Shapiro"), Grace Dodge's Principal, who referred the matter to the Office of the Special Commissioner of Investigation for the New York City School District ("SCI"). Smith does not dispute that Shapiro had a duty to report such allegations of sexual misconduct or that Shapiro promptly instructed the Assistant Principal to make a report to SCI.[2]

7. Audit of Per Session Submissions

Also during March 2007, Ambrosio was conducting a periodic review of "per session" submissions.[3]  According to Ambrosio, she chose to review Smith's per session submission because Smith was at that time coaching at DeWitt but teaching at Grace Dodge. Grace Dodge provided DeWitt with a list of 14 days during the 2006-2007 school year when Smith had been absent from his

---

[2] At his disciplinary hearing, Smith asserted that he told the student to "take a lap and sit on your spot."

[3] "Per session" is the term used for work completed by teachers after regular school hours.  Coaching is per session work.

regular teaching assignment.  Ambrosio compared the dates of absences to the dates of Smith's submissions for payment of per session compensation and found three days when Smith had been absent from his regular teaching assignment for medical reasons but requested pay for per session work.  One of the three days was September 14, 2006.  On that day, Smith took a sick day from his day teaching job at Grace Dodge but certified that he worked two hours of per session time as junior varsity football coach at DeWitt.

Smith does not deny that the BOE records indicate such a discrepancy.  Under the prevailing regulations governing the conduct of New York City public school employees, an employee may not take paid sick leave from a day assignment but report for per session work after regular school hours.  See New York City Public Schools, Chancellor's Regulation C-175 ¶ 10(i) ("If an employee is absent because of illness from a regular day school assignment and reports for work the same day in an afternoon or evening per session activity, the day school absence may <u>not</u> be charged to cumulative absence reserve and a salary deduction must be made.").  Ambrosio referred the matter to SCI.

8. Two <u>Daily News</u> Articles

Two articles in <u>The New York Daily News</u> ("<u>Daily News</u>"), one appearing on April 24, 2007, and another appearing on April 22,

2008, quote Smith complaining about the disparity in the funding of boys' and girls' athletics at DeWitt.[4]  In the 2007 article, Smith was quoted extensively on the difficulties the DeWitt women's softball team had experienced in securing funds and equipment from the school administration, in contrast to much larger expenditures on the men's baseball team.  The 2008 article discussed disciplinary actions that had been taken against Smith by the BOE, and quoted Smith linking these actions to his complaints in 2007 about funding disparities.

 9. 2007 and 2008 Disciplinary Proceedings

On July 23, 2007, SCI issued a report recommending disciplinary action against Smith for the sexual misconduct reported by the student.  Two days later, it also recommended disciplinary action because of Smith's performance of per session work when he was absent from his regular teaching assignment.  In August 2007, the BOE assigned Smith to a reassignment center, sometimes referred to as a "rubber room."

On April 19, 2008, the BOE filed formal disciplinary charges against Smith.  The charges contained three specifications of misconduct:

Specification 1:  On or about March 12, 2007
Respondent:
  a)   Told Student A* that he wanted her to
       sit on top of him, on his lap.

---

[4] The parties did not provide copies of the Daily News articles with their motion papers.

       b)   Winked at Student A*.
Specification 2:  On or about the following date,
Respondent worked his per session assignment as a
football coach on a day that he called in sick from
his regular assignment and was paid for the day in
violation of Chancellor's Regulation C 175:
       a)   September 14, 2006.
Specification 3:  On or about June 12, 2006,
Respondent failed to properly supervise his class in
that:
       a)   He was engaged in conversation with
            another teacher for the majority of the
            class time.
       b)   He failed to provide instruction or
            direction to his students.
       c)   He failed to supervise students sitting
            on the desk and in the bleachers.
       d)   He allowed students who were not
            properly prepared to play basketball.

Pursuant to Education Law § 3020-a, the formal charges against

Smith precipitated his suspension with pay on May 2, 2008,

pending a hearing and determination.

    10. 2009 Filing of Federal Lawsuit

    On November 6, 2009, Smith filed this action, alleging that

BOE and the four individual defendants retaliated against him in

violation of Title IX of the Education Amendments of 1972, 20

U.S.C. §§ 1681 et seq. ("Title IX"); the First and Fourteenth

Amendments of the U.S. Constitution, 42 U.S.C. § 1983; the New

York State Human Rights Law, New York State Executive Law §§ 290

et seq. ("SHRL"); and the New York City Human Rights Law, New

York City Administrative Code §§ 8-101 et seq. ("CHRL").

11. 2010 Disciplinary Hearing

Smith's disciplinary hearing took place in March and April of 2010.  On August 16, 2010, the hearing officer issued her findings and award regarding the disciplinary charges against Smith.  She determined that Smith was guilty of the conduct charged in specifications 1(a), 1(b), 2, 3(a), and 3(d), and not guilty of the conduct charged in specifications 3(b) and 3(c). She imposed a sanction of suspension without pay for six months, required Smith to take sensitivity training, and ordered him to repay $72.95 for the per session pay received for his work on September 14, 2006.

12. Proceedings in Federal Court Action

As noted, Smith filed this action on November 6, 2009.  He was represented at that time by counsel.  After a January 2010 conference with the parties, the Court ordered them to engage in document discovery but stayed the remainder of the litigation until the hearing officer had rendered a decision.  Following the August 16, 2010 decision by the hearing officer, a scheduling order was issued requiring any amended pleadings to be filed by November 5, 2010, and discovery to close by March 11, 2011.  The parties later requested an extension of the schedule, which was granted.  As of January 26, 2011, summary judgment motions were due to be filed by May 13, 2011.

The defendants filed a motion for summary judgment on May 13, 2011, and on that same day plaintiff's counsel sought to withdraw.  Smith had fired his counsel on May 13.  The application to withdraw was granted on May 24, but Smith was given additional time to respond to the motion for summary judgment since he was now proceeding pro se.  Ultimately, Smith's opposition was scheduled to be filed by July 15.  On June 29, Smith was advised that there would be no further extension of that deadline.  Smith did not file his opposition to the motion until August 2, and the defendants filed their reply on August 19.

On September 14, 2011, Smith sent a sur-reply.  Smith's sur-reply alleged that in August and September 2011 the defendants had taken further retaliatory steps against him. According to Smith, these steps included stripping him of tenure and requiring him to "bid" for open jobs at district schools.

Discussion

The defendants have moved for summary judgment on all claims.  They principally argue that many of Smith's claims are barred by the statute of limitations, and that they are entitled to summary judgment on any claims that survive the statute of limitations.  In opposing the motion Smith has requested an opportunity to amend his pleadings to include claims that the

10

BOE violated his procedural due process rights and state law claims for breach of contract, defamation, and intentional infliction of emotional distress.

1. Statute of Limitations

Defendants move to dismiss all of Smith's claims of retaliation under federal law that are premised on actions that occurred prior to November 7, 2006, on the ground that they are time-barred.  They further move to dismiss the NYSHRL and CHRL claims as entirely barred.  The application is granted.

Smith's Title IX and First Amendment retaliation claims are governed by a three-year statute of limitations.  Curto v. Edmundson, 392 F.3d 502, 503-04 (2d Cir. 2004) (Title IX); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (§ 1983).  Under state law, claims against the BOE or any of its officers must be brought within one year.  N.Y. Educ. Law § 3813 (2-b); Amorosi v. South Colonie Indep. Cent. Sch. Dist., 9 N.Y.3d 367, 371-74 (2007).[5]  In addition, a plaintiff bringing a state law claim against the BOE or its officers must file a notice of claim with the BOE "within three months after the claim accrues."  N.Y. Educ. L. § 3813 (1).  The 90-day notice of claim requirement also applies to claims "against any teacher or

---

[5] The limitations period applies to claims brought against the BOE under the CHRL as well as the NYSHRL.  See Springs v. Bd. of Educ., No. 10 Civ. 1234 (RJH), 2010 WL 4068712 at *2 (S.D.N.Y. Oct. 14, 2010).

member of the supervisory or administrative staff or employee where the alleged tort was committed by such teacher or member or employee acting in the discharge of his duties within the scope of his employment . . . ." Id. § 3813 (2).

Smith filed this action on November 6, 2009.  Therefore, the Title IX and § 1983 claims that accrued prior to November 6, 2006 are time-barred.  The first adverse action of which Smith complains that occurred after that date is the initiation of the disciplinary proceedings against him in March 2007.  New York State's one-year statute of limitations bars any claim against the BOE or its officers arising earlier than November 6, 2008. Therefore, state law claims premised on the filing of formal disciplinary charges against Smith in April 2008 are barred. Moreover, Smith never filed any notice of claim prior to initiating this lawsuit.  As a result, the only timely claims are the federal law claims premised on the initiation of disciplinary charges against Smith in March 2007, and the disciplinary proceedings that followed.

Smith contends that his First Amendment claim of retaliation is of a continuing violation.[6]  While "a Section 1983

---

[6] While Smith's submissions in opposition to this motion could be construed as seeking solely to pursue his claims associated with the disciplinary proceedings begun in 2007, since he makes an argument that the continuing violation doctrine applies here, it will be assumed that Smith seeks to preserve his claims

claim ordinarily accrues when the plaintiff knows or has reason to know of the harm," Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (citation omitted), the continuing violations doctrine operates as an exception to the general rule.  If the plaintiff can show that the harm complained of constituted not a series of discrete acts but an ongoing policy, then "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Id. (citation omitted).  Establishing a continuing violation requires demonstrating "both the existence of an ongoing policy . . . and some non-time-barred acts taken in furtherance of that policy." Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1994).  Discrete acts, however, constitute distinct claims, and must be brought within three years of their accrual date; although the plaintiff may allege a relationship among these acts, that is not sufficient to constitute a continuing violation. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." Id.

The continuing violation doctrine does not permit Smith to pursue a First Amendment claim based on any of the adverse

---

associated with adverse actions that were taken against him before November 2006.

actions that were taken against him prior to November 6, 2006.
Smith has complained of the following events that occurred
between 1999 and 2005:  his position as assistant football coach
was terminated; he was issued an unsatisfactory rating following
a classroom observation; he was denied a request for line of
duty injury status; and he was blocked from being hired as an
assistant football coach.  Each of these events was a discrete
action whose statute of limitations period accrued at the time
of the event.

Finally, Smith filed a notice of claim on June 2, 2011.[7]  As
already noted, this notice is untimely to the extent Smith
wishes to pursue his NYSHRL and CHRL claims against the BOE and
the individual defendants premised on the initiation of
disciplinary proceedings in March 2007 and the filing of formal
disciplinary charges against him in April 2009.

In his opposition to the motion for summary judgment, Smith
also seeks leave to amend his complaint to include claims that
the BOE violated his procedural due process rights, as well as

---

[7] Smith has submitted a letter from the New York City
Comptroller's Office, responding to his June 2 notice of claim
filing.  The letter states that Smith's claim has been
disallowed, and informs Smith that "[i]f you wish to pursue your
claim against the City, you may bring a lawsuit against the City
if it is started within one year and ninety days from the date
of occurrence."  Because of its reference to the "date of
occurrence," the letter cannot be construed to restart the
accrual period for time-barred claims.  In any event, under New
York law, a court lacks discretion to allow a late notice of
claim.  See Amorosi, 9 N.Y.3d at 373-74.

state law claims for breach of contract, defamation, and intentional infliction of emotional distress.  The motion for leave to amend is denied.  "[A] district court . . . does not abuse its discretion in denying leave to amend the pleadings where the moving party has failed to establish good cause, as required by Rule 16(b), to amend the pleadings after the deadline set in the scheduling order."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007).  "[A] finding of 'good cause' depends on the diligence of the moving party."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).  As set out in the October 25, 2010 scheduling order, the deadline for filing an amended complaint was November 5, 2010.  This date was more than three months after the August 16, 2010 decision by the hearing officer, and thus permitted ample time to add any challenge to the conduct of the disciplinary hearings that Smith wished to litigate.  Fact discovery closed on March 11, 2011.  Smith has not shown good cause to support this late request to amend his pleadings.

2. Smith's First Amendment Retaliation Claim

The single surviving claim is Smith's claim that the BOE retaliated against him in violation of the First Amendment by

initiating disciplinary proceedings against him in March 2007.[8]
The BOE seeks summary judgment on this claim.

Summary judgment may not be granted unless all of the
submissions taken together "show that there is no genuine issue
as to any material fact and that the movant is entitled to
judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving
party bears the burden of demonstrating the absence of a
material factual question, and in making this determination, the
court must view all facts "in the light most favorable" to the
nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323,
(1986); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d
Cir.2008).

When the moving party has asserted facts showing that the
non-movant's claims cannot be sustained, the opposing party must
"set out specific facts showing a genuine issue for trial," and
cannot "rely merely on allegations or denials" contained in the
pleadings.  Fed.R.Civ.P. 56(e); see also Wright v. Goord, 554
F.3d 225, 266 (2d Cir. 2009).  "A party may not rely on mere

---

[8] The BOE has requested summary judgment on the merits on each of
Smith's  claims.  As noted above, the state law claims are time-
barred, as well as any federal law claim arising from an adverse
action taken before November 7, 2006.  In opposition to the
motion, Smith only argues against the dismissal of the First
Amendment claim.  Smith has thereby abandoned the remainder of
his claims and the BOE is awarded summary judgment on the Title
IX and state law claims on this ground as well.  See, e.g.,
Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 363
n.9 (2d Cir. 2004).

speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts—"facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, (1986); <u>see also</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

"To survive summary judgment on a First Amendment retaliation claim, a public employee must bring forth evidence showing that he has engaged in protected First Amendment activity, he suffered an adverse employment action, and there was a causal connection between the protected activity and the adverse employment action." <u>Anemone v. Metro. Transp. Auth.</u>, 629 F.3d 97, 114 (2d Cir. 2011) (citation omitted).  Thus, to succeed on a claim of First Amendment retaliation, the plaintiff must demonstrate a causal connection "sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." <u>Cotarelo v. Vill. of</u>

Sleepy Hollow Police Dep't, 460 F.3d 237, 251 (2d Cir. 2006)
(citation omitted).

The threshold question is whether the public employee's
activity is entitled to First Amendment protection.  In Garcetti
v. Ceballos, the Supreme Court clarified that this "entails two
inquiries:  1) whether the employee spoke as a citizen on a
matter of public concern and, if so, (2) whether the relevant
government entity had an adequate justification for treating the
employee differently from any other member of the general
public."  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d
Cir. 2008) (quoting Garcetti, 547 U.S. 410, 418 (2006)).  The
first of these inquiries itself involves "separate questions as
to (1) whether the subject of the employee's speech was a matter
of public concern and (2) whether the employee spoke 'as a
citizen' rather than solely as an employee."  Jackler v. Byrne,
--F.3d--, 2011 WL 2937279 at *7 (2d Cir. July 22, 2011).
Whether the speech is on a matter of public concern and whether
the plaintiff spoke as a citizen or employee are both questions
of law.  See id. at *7, *9.  "To constitute speech on a matter
of public concern, an employee's expression must be fairly
considered as relating to any matter of political, social, or
other concern to the community."  Id. at *8 (quoting Connick v.
Myers, 461 U.S. 138, 146 (1983)).  Public employees speak as
employees and not citizens when they "make statements pursuant

to their official duties." Garcetti, 547 U.S. at 421.  The

Second Circuit has explained that "speech can be 'pursuant to' a

public employee's official job duties even though it is not

required by, or included in, the employee's job description, or

in response to a request by the employer." Weintraub v. Bd. of

Educ., 593 F.3d 196, 203 (2d Cir. 2010).  Speech may be deemed

"pursuant to" the public employee's official duties if it is

"part-and-parcel of his concerns about his ability to properly

execute his duties."  Id. (citation omitted).

Smith has not provided any documentary evidence of his

complaints about funding disparities or described those

complaints in any detail.  Without any detailed description of

the complaints that Smith asserts he made in 2001 or later,[9] it

is difficult to assess whether his complaints constitute

protected speech.  Disparity in funding is a matter of serious

public concern.  But, as women's softball coach, Smith was

directly affected by the funding of women's teams in general and

his team specifically.  Perceived underfunding of women's sports

would have been "part and parcel of his concerns about his

---

[9] While Smith's complaint in this action only describes the Daily
News articles and protests to school officials in the school
year 2001 to 2002, in opposition to the motion for summary
judgment Smith asserts that he "spoke out in 2005 & 2006 against
discrimination between funding for men's and women's sports
programs" and other issues.  At another point in these papers he
contends that the "actions which are the basis for my claims
started in 2006/2007 after I spoke out against and challenged
the withholding of funding for girls [sic] softball programs."

ability to properly execute his duties," and communicating
concerns to school administration may have constituted speech as
an employee.  Any reliable conclusion would require evidence of
precisely what was said and to whom it was communicated.
Smith's interviews with the press in 2007 and 2008, however,
were clearly spoken as a citizen on a matter of public concern;
the defendants in their briefing concede as much.

Even if it is assumed that Smith engaged in protected
speech, the BOE asserts that Smith cannot demonstrate a causal
connection between any protected activity and the disciplinary
proceedings initiated by Ambrosio and Shapiro in March 2007.
There are two periods of protected activity at issue here:
Smith's complaints to BOE employees beginning in 2001 about
disparity in the funding of girls' and boys' athletic
activities, and the Daily News articles regarding his complaints
that appeared in April 2007 and April 2008.  Smith has not
presented evidence to support a finding that the March 2007
referrals were caused by either set of complaints.

First, the Daily News articles followed both of the
referrals by Ambrosio and Shapiro to SCI to investigate,
respectively, the time records violation and the sexual
misconduct allegation.  Thus, neither referral could have been
made in retaliation for those articles.

20

Second, although Smith asserts that he had made oral complaints to BOE personnel about gender disparities in funding athletic activities at DeWitt, his complaint describes those complaints as occurring in 2001 and 2002.  As noted above, there is no evidence in the record that these complaints were actually made, beyond conclusory assertions in Smith's pleadings.  Smith does not offer any copies of written complaints, describe any conversation in detail or identify specific dates on which he spoke against discriminatory funding practices.  In any event, the complaints to which Smith alludes came at least five years before the March 2007 referrals to SCI.  The scattered references in Smith's summary judgment papers to protests that he made about funding disparities to unidentified persons during the period 2005 to 2007 are also insufficient to raise a question of fact that would prevent the defendants' motion from being granted.  These brief, conclusory references do not provide a sufficient basis from which to assess whether the protests constitute protected speech or are causally related to the disciplinary referrals made in the spring of 2007.

Finally, there is an additional reason that Smith has failed to present sufficient evidence that any of the complaints that he asserts that he made about funding caused the disciplinary proceedings to commence against him.  Smith does not deny any of the underlying facts surrounding the March 2007

referrals.  Specifically, he does not contest that each of the referrals arose from circumstances entirely independent from any complaints that he had made about funding disparities.  For instance, he does not deny that the Grace Dodge student made the complaint in March and that BOE regulations required a principal to report such a complaint to SCI.  Nor does he deny that Ambrosio routinely reviews time records for violations and that the discrepancies that were discovered actually appeared in his time record documents.  Based on these facts, no reasonable juror could find that any protected activity in which Smith may have engaged was a substantial motivating factor in the disciplinary actions taken against him by the BOE and the individual defendants.  Accordingly, the defendants are entitled to summary judgment on Smith's First Amendment retaliation claim.

<u>Conclusion</u>

The defendants' May 13, 2011 motion for summary judgment is granted.  The Clerk of Court shall close this case.

SO ORDERED:

Dated:     New York, New York
           October 28, 2011

                              _____
                              DENISE COTE
                    United States District Judge

COPIES SENT TO:


Daniel Smith
8 Valley View Terrace
Suffern, NY 10901


Christopher A. Seacord
Assistant Corporation Counsel
The City of New York Law Dept.
100 Church Street
New York, NY 10007